IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CENTRAL WEST VIRGINIA            )
ENERGY, INC.,                    )
                                 )
               Petitioner,       )
                                 )
v.                               )          Civil Action No. 3:10CV93–HEH
                                 )
BAYER CROPSCIENCE LP,            )
                                 )
               Respondent.       )

## MEMORANDUM OPINION
### (Granting Respondent's Motion to Dismiss)

This is a challenge to an arbitration award in a protracted dispute over coal purchase agreements. It is presently before the Court on Respondent's Motion to Dismiss and Petitioner's Motion for Summary Judgment. The parties have submitted memoranda in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process.

For the reasons stated herein, Respondent's motion to dismiss is granted.

## I.

Petitioner Central West Virginia Energy, Inc. ("CWVE") is a subsidiary of Massey Energy Company and sells coal in West Virginia. Respondent Bayer CropScience LP ("Bayer"), among its significant business activities, owns a power plant in Institute, West Virginia.

In 1997, CWVE entered into a contract to sell coal to Rhône-Poulenc Inc., Bayer's predecessor in interest. The contract was for a term of two years but, by its terms, could be extended for one-year terms. The contract provided that disputes arising under the contract would be resolved through binding arbitration to be conducted in Charleston, West Virginia. The 1997 purchase contract was extended by agreement of the parties numerous times, but the parties disagree as to whether this agreement was extended into 2008.

CWVE alleges that, in the midst of its discussions about whether the 1997 agreement had been extended into 2008, the parties signed a new coal supply agreement for purchase at a higher price covering the period from July 1, 2008 to December 31, 2010. This agreement had an arbitration clause that provided for arbitration of disputes arising out of or relating to the contract, in Richmond, Virginia.

Bayer maintained that the parties had a binding extension of the 1997 contract into 2008. This dispute resulted in a declaratory judgment action before this Court (3:08-CV-558-HEH) to resolve the validity of purported extensions to the 1997 agreement. On March 3, 2009, this Court entered a consent judgment in the declaratory judgment action that the two purported purchase agreement documents were neither valid nor enforceable.

While this case was still pending, Bayer made a demand for arbitration in Charleston, West Virginia under the 1997 contract asking for recognition of the 1997 contract extensions and seeking recovery of the difference in prices between the

purported 1997 agreement and the July 2008 contract. Bayer then repudiated the July 2008 agreement, and CWVE demanded arbitration in Richmond to enforce the July 2008 contract.

Following CWVE's demand for arbitration in Richmond, Bayer filed suit in the Circuit Court for Kanawha County, West Virginia on April 28, 2009. This suit sought declaratory judgment that the Charleston arbitration should go forward and an injunction enjoining the Richmond arbitration.

A few days later, on May 8, 2009, CWVE filed a motion with the Charleston arbitration panel to dismiss Bayer's arbitration demand. The Charleston panel denied CWVE's motion to dismiss and proceeded with its arbitration.

On November 3, 2009, the Kanawha County Circuit Court granted summary judgment in favor of Respondent CWVE. The court found as a matter of law that the parties agreed in the 1997 contract to submit the question of arbitrability to the arbitration panel by adoption of the American Arbitration Association (AAA) Commercial Arbitration Rules. The court also ruled that Bayer's challenge to the July 2008 agreement must be submitted to arbitration.

On February 11, 2010, the West Virginia arbitration panel issued its Reasoned Award in favor of Bayer in the amount of $10,540,885.07 plus fees. As part of its findings, the West Virginia panel ruled that CWVE had waived its right to withdraw the validity of the July 2008 agreement from the panel's consideration. The panel ultimately

3

concluded that the July 2008 agreement was void.

On February 16, 2010, Petitioner filed the current Petition to Vacate a Portion of the Arbitration Award. In its petition, CWVE asks this Court to vacate all parts of the West Virginia panel's arbitration award dealing with the July 2008 agreement, contending that these issues should instead be submitted to the Richmond panel for arbitration.

## II.

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), amplified the standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While it does not require "detailed factual allegations," *Twombly* held that Rule 8 of the Federal Rules of Civil Procedure does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555. Thus, a complaint containing facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Rather,

4

a complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

As Judge Niemeyer noted in *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009), this analysis is context-specific and requires the "reviewing court to draw on its judicial experience and common sense." *Id.* at 193. The court also noted in *Giacomelli* that "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III.

CWVE asks the Court to vacate a portion of the West Virginia Panel's arbitration award pursuant to § 10(a)(4) of the Federal Arbitration Act. 9 U.S.C. §§ 1-16. This statute permits a district court to vacate an arbitration panel's award "where the arbitrators exceeded their powers." *Id.* § 10(a)(4).

CWVE argues that the validity of the July 2008 agreement was not an arbitrable issue for the West Virginia Panel to address. CWVE argues that questions pertaining to the July 2008 agreement should instead be submitted to arbitration in Richmond in accordance with the 2008 agreement's arbitration clause.

As the Supreme Court has indicated, the phrase "questions of arbitrability" has a more limited meaning in this arena than its literal interpretation might indicate. *Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 592 (2002). In *Howsam*, the Court stated that "questions of arbitrability" are limited to questions that the parties would expect the court to decide. *Id.* Typical examples of "questions of arbitrability"–ones for judicial determination–are whether a non-signatory is bound by an arbitration clause, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920 (1995), and whether an arbitration clause applies to a particular type of controversy. *AT & T Techs. v. Commc'ns Workers*, 475 U.S. 643, 106 S. Ct. 1415 (1986). Procedural questions "where parties would likely expect that an arbitrator would decide," as opposed to "questions of arbitrability," are presumptively for an arbitrator to resolve. *Howsam*, 537 U.S. at 84, 123 S. Ct. at 592. The Fourth Circuit has explained a "question of arbitrability" perhaps more clearly as "a question regarding whether the parties should be arbitrating at all." *Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006).

In the immediate case, the core dispute is not simply whether the July 2008 agreement should be arbitrated or adjudicated in a court. The July 2008 agreement unquestionably contains a provision providing for resolution of disputes through arbitration. The question presented is whether the July 2008 agreement can be incorporated as an element of the West Virginia arbitration or whether it must be arbitrated solely by a panel in Richmond. Following the guidance of the Supreme Court, this is not a "question of arbitrability" at all. The matter will be arbitrated regardless how the Court answers the question before it. Instead, the question presented is *where* the

6

arbitration will take place.

This question is analogous to the one the Fourth Circuit confronted in *Dockser v. Schwartzberg*, 433 F.3d 421 (4th Cir. 2006). In *Dockser*, the plaintiff asked the court to determine whether a single arbitrator or a three-arbitrator panel should preside over the arbitration proceedings. *Id.* at 423. The Fourth Circuit found that the question regarding number of arbitrators was a procedural question to which a presumption of resolution by the arbitrator applied. *Id.* at 425-26.

Also analogous are decisions in other circuits where litigants have sought a court's determination as to whether arbitration should proceed before multiple arbitration panels or a consolidated panel. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580 (3d Cir. 2007); *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573 (7th Cir. 2006); *Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union*, 321 F.3d 251 (1st Cir. 2003). In each of these cases, the courts found that the question of a consolidated arbitration versus separate arbitration panels was a procedural question for arbitrators rather than courts to determine. *Westchester Fire*, 489 F.3d at 590; *Wausau*, 443 F.3d at 578; *Shaw's Supermarkets*, 321 F.3d at 254-555.

Reviewing the present facts in light of this precedent, the Court finds that the question of whether the West Virginia arbitration panel should consider the 2008 contract is procedural and that such a question is for arbitral, rather than judicial, resolution. Just as a question of *who* should arbitrate is procedural, the question of *where* a question

should be arbitrated is procedural. This conclusion is consistent with the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983).

Petitioner has failed to state a claim upon which this Court can grant relief. Respondent's motion is therefore granted, and the petition is dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 2, 2010
Richmond, VA